T.C. Memo. 2012-180

UNITED STATES TAX COURT

STEVEN J. STANWYCK, Petitioner, AND JOAN STANWYCK, Intervenor
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 533-07L.          Filed June 28, 2012.

Steven J. Stanwyck, pro se.

Joan Stanwyck, pro se.

<u>Michael W. Tan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge:  This case is before the Court in response to a

determination notice under section 6015(e) and section 6330(d)(1) concerning

petitioner's tax liabilities for 1991, 1997 and 1998 (years at issue).[1] There are two issues for decision. The first issue is whether petitioner is entitled to relief from joint and several liability under section 6015. We hold that petitioner is not. The second issue is whether respondent abused his discretion in sustaining his collection action for the years at issue. We hold that respondent did not abuse his discretion.

FINDINGS OF FACT

Some of the facts have been deemed stipulated pursuant to Rule 91(f) and are so found. The stipulation of facts, the supplemental stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in California when he filed the petition.

I. Background

Petitioner and intervenor Joan Stanwyck (collectively, the Stanwycks) were husband and wife for 32 years and had five children. Petitioner holds master of business administration and juris doctor degrees. He was a practicing attorney, operating as a sole practitioner during all relevant times. The State Bar of California later disbarred petitioner.

---

[1]All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Ms. Stanwyck was primarily a homemaker. She also served as bookkeeper for the family and petitioner's law practice. Ms. Stanwyck filed for legal separation in 2000.

During the 1990s petitioner was involved in an arbitration proceeding that entitled him to a percentage of an award. Petitioner retained an economist who appraised petitioner's future interest in the arbitration award at $14 million (arbitration interest). Petitioner also engaged an estate planner to establish the Stanwyck Family Foundation (Foundation). Petitioner donated the arbitration interest to the Foundation, claiming a $14 million charitable contribution deduction on the Stanwycks' joint income tax return for 1994. Petitioner submitted Form 8283, Noncash Charitable Contributions, and the appraisal with the return. He signed Form 8283 as both donor and donee, acknowledging receipt of the arbitration interest as the Foundation's chief financial officer.

## II. The Stanwycks' Joint Income Tax Liabilities

The Stanwycks late filed their joint tax return for 1991 and late paid the taxes owed, resulting in outstanding additions to tax and interest. The Stanwycks also filed a joint tax return for 1997, an amended joint tax return for 1997 and a joint tax return for 1998. The Stanwycks claimed $146,664 and $321,297 of charitable contributions on their joint income tax returns for 1997 and 1998, respectively.

Each deduction was a carryover of the arbitration interest contributed to the Foundation. The amended return for 1997 also reported additional income from capital gains, dividends and interest. The Stanwycks failed to pay the resulting tax liabilities. Respondent issued separate deficiency notices for 1997 and 1998, disallowing the charitable contributions claimed. The Stanwycks did not petition this Court for redetermination of either deficiency. Consequently, respondent assessed the tax liabilities for 1997 and 1998.

Respondent issued a Notice of Intent to Levy and Notice of Your Right to a Hearing, recorded a Federal tax lien with the Los Angeles County Recorder's Office and issued petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. Petitioner submitted to respondent Form 8857, Request for Innocent Spouse Relief, and Form 12150, Questionnaire for Requesting Spouse. Soon thereafter, petitioner also timely submitted Form 12153, Request for a Collection Due Process Hearing. Petitioner requested that the matters be separately reviewed and that the hearings be conducted face to face.

III. <u>Request for Innocent Spouse Relief</u>

Appeals Officer Robert Cipriotti (AO Cipriotti) was assigned to review petitioner's innocent spouse request (after respondent's Centralized Innocent Spouse Operations Center initially completed its review). AO Cipriotti had at least

five telephone conversations with petitioner and exchanged more than a dozen letters. Twice petitioner postponed meetings shortly before they were to occur. Petitioner demanded subpoena power over witnesses and production of documents but never requested specific documents or filed a Freedom of Information Act request.

AO Cipriotti discovered that petitioner had significant assets in a real estate partnership. AO Cipriotti mailed his findings to petitioner after multiple faxes to petitioner were unsuccessful. Petitioner failed to respond to AO Cipriotti's letter. When petitioner failed to respond to AO Cipriotti's requests, AO Cipriotti concluded the review and denied petitioner any relief. Petitioner's actions caused AO Cipriotti's review to last 18 months.

IV. Collection Action Review

The collection action review (which was concurrent with the innocent spouse review) was also subject to delays. Appeals Officer Janice Rich (AO Rich) was assigned to review the collection action. At the outset, AO Rich scheduled a face-to-face hearing. Petitioner asked to postpone the hearing by seven months because petitioner's schedule was busy and to hold the hearing at an office closer to petitioner's home. AO Rich denied petitioner's request for a 7-month extension but did transfer the matter to an office closer to petitioner's home.

Thereafter, the collection action review was assigned to Settlement Officer Joanne Kaminski (SO Kaminski). SO Kaminski asked that petitioner submit financial information so she could determine petitioner's eligibility for collection alternatives. He did not comply. Rather, petitioner contended that respondent's lien and levy action did not conform to applicable notice and timing requirements. Petitioner also requested to conduct formal discovery, to receive an accommodation under the Americans with Disabilities Act (ADA) and to stay the collection action because of a previously filed bankruptcy petition. Petitioner also instructed SO Kaminski not to consider any spousal defenses because the innocent spouse claim was being separately evaluated. SO Kaminski informed petitioner that the informal hearing did not include discovery. She also noted that petitioner stated that he was not disabled and that the bankruptcy court denied the discharge before the collection action began.

SO Kaminski scheduled another in-person hearing with petitioner (6 months after the first canceled hearing and 16 months after petitioner challenged the collection action). Petitioner did not appear or even contact her to cancel the hearing. SO Kaminski concluded that petitioner was intentionally delaying the review, noting that an earlier bankruptcy proceeding petitioner initiated lasted 10 years. SO Kaminski again warned petitioner that the determination would be made

upon the administrative record if petitioner did not provide any financial or other relevant information. Petitioner failed to do so. Consequently, SO Kaminski sustained the collection action.

V. Determination Notice

Respondent issued a determination notice denying petitioner's request for innocent spouse relief under section 6015 and sustaining the collection action. Respondent concluded that the collection action conformed with applicable laws and procedures, that spousal defenses asserted had been considered and that the proposed collection action was no more intrusive than necessary. He also noted that petitioner did not provide financial information or suggest any collection alternatives.

Petitioner timely filed a petition for redetermination with this Court regarding respondent's decisions to deny the request for innocent spouse relief and to sustain the collection action.

OPINION

Petitioner continues his pattern of delay and attempts to prolong our review by failing to provide a post-trial brief. Instead he has made various nontraditional motions. Petitioner is an experienced trial attorney. The Court warned him on several occasions that we would decide this case based on the record if he failed to

provide a post-trial brief. The Court established a briefing schedule at the end of trial. Petitioner disregarded the Court's order, and his inaction is independent grounds to deny his request for us to consider respondent's denial of his claims. See Rule 123. Failure to provide the post-trial brief is also grounds to decide against the party with the burden of proof. See Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986).

As we explained, we will decide this case based on the record before us. Petitioner advances two issues. We address them in turn. We are first asked to decide whether petitioner is entitled to innocent spouse relief for the years at issue. Next, we will determine whether respondent abused his discretion in sustaining the collection action.

## I. Innocent Spouse Relief

This Court applies a de novo scope and standard of review to a taxpayer's request for innocent spouse relief. Porter v. Commissioner, 132 T.C. 203, 210 (2009). A trial de novo requires independent judicial determination of the issues in the case. See, e.g., Morris v. Rumsfeld, 420 F.3d 287, 292, 294 (3d Cir. 2005); Timmons v. White, 314 F.3d 1229, 1233-1234 (10th Cir. 2003). The spouse requesting relief generally bears the burden of proof. See Rule 142(a); Alt v.

Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

Married taxpayers who elect to file a joint return are jointly and severally liable for the entire tax due. See sec. 6013(d)(3). A spouse or former spouse may petition the Commissioner for relief from joint and several liability in certain circumstances. See sec. 6015(a). A spouse may qualify for relief from liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c). A spouse may seek equitable relief under section 6015(f) if relief is not available under section 6015(b) or (c), which does not apply to an underpayment of tax. Fernandez v. Commissioner, 114 T.C. 324, 329-331 (2000); Butler v. Commissioner, 114 T.C. 276, 287-292 (2000). Equitable relief may, however, be available under section 6015(f) for an underpayment of tax. Sec. 1.6015-4, Income Tax Regs.; Rev. Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297.

A. Section 6015(b)

Petitioner seeks to avoid liability for the 1997 and 1998 understatements under subsection (b).[2] The Commissioner may relieve a taxpayer from joint and several liability for tax if the requesting spouse demonstrates, among other things,

---

[2]Petitioner is not eligible for relief from the liability for 1991 because subsec. (b) does not permit relief for an underpayment. See Fernandez v. Commissioner, 114 T.C. 324, 329-331 (2000).

that the understatement is attributable to an item of the nonrequesting spouse. Sec. 6015(b)(1)(B); see also Alt v. Commissioner, 119 T.C. at 313.

We find that the charitable contribution deductions are attributable to petitioner, who formed the Foundation, made the charitable contribution and obtained the appraisal. The "gift" was petitioner's interest in the arbitration award and had nothing to do with Ms. Stanwyck. Petitioner contributed the arbitration interest in his personal capacity and received the contribution in his capacity as the Foundation's chief financial officer. The returns for 1997 and 1998 reflected the charitable contribution carryovers. Petitioner presented no credible evidence that the charitable contribution was attributable to Ms. Stanwyck. Likewise, the record did not support a finding that the 1997 income from capital gains, dividends and interest was attributable to Ms. Stanwyck. Petitioner is unable to satisfy this requirement. Thus, we need not consider the other requirements. See Alt v. Commissioner, 119 T.C. at 313. Accordingly, petitioner is not entitled to relief from joint and several liability under subsection (b) for the 1997 and 1998 liabilities.

B. Section 6015(c)

Petitioner further claims eligibility for relief under subsection (c). A requesting spouse may elect to have the liability limited to his or her proportionate

share of the liability if the spouses are divorced, legally separated or living apart for the 12 months preceding the election. Sec. 6015(c)(1), (3)(A)(i). Liability allocation is based on the items that gave rise to the deficiency (erroneous items). Erroneous items are allocated to each spouse as though each had filed a separate return for the taxable year, subject to some exceptions. Sec. 6015(d)(3)(A). The requesting spouse's proportionate share of the deficiency is based on his or her proportionate share of the erroneous items. See sec. 6015(d)(1), (3)(A); sec. 1.6015-3(d)(4)(i), Income Tax Regs. Again, the burden lies with the requesting spouse to demonstrate that the deficiency is allocable to the nonrequesting spouse. See Porter v. Commissioner, 132 T.C. at 210.

As previously discussed, petitioner owned the arbitration interest, obtained an appraisal and received the charitable contribution on behalf of the Foundation. Further, the record does not support allocating the 1997 income from capital gains, dividends and interest to Ms. Stanwyck. The deficiency is allocable to petitioner. Accordingly, he is not eligible for relief for the unpaid tax liabilities for 1997 and 1998 under section 6015(c).

C. Section 6015(f)

Petitioner also requests equitable relief under subsection (f). The Commissioner has discretion to relieve a requesting spouse of joint liability if,

taking into account all the facts and circumstances, it is inequitable to hold that spouse liable for any deficiency or unpaid tax. Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs. The requesting spouse must satisfy seven threshold conditions before the Commissioner considers a request for equitable relief. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297. The income tax must be attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income, unless an enumerated exception applies. See id.; sec. 4.01(7), 2003-2 C.B. at 297-298.[3] The additional tax assessed for 1997 and 1998 is attributable to petitioner. Petitioner does not qualify for any of the enumerated exceptions.

Similarly, we find the underpayment for 1991 was also attributable to petitioner. The Stanwycks paid the tax liability for 1991 late and never paid the resulting additions to tax or interest. This was of petitioner's doing. Ms. Stanwyck did not know that the tax return for 1991 was filed late or that the Stanwycks were

---

[3]The Commissioner issued a notice after trial that proposed updates to Rev. Proc. 2003-61, 2003-2 C.B. 296. See Notice 2012-8, 2012-4 I.R.B. 309. The proposed revenue procedure expands how the Commissioner may take into account abuse and financial control by the nonrequesting spouse in determining whether equitable relief is warranted. Id. The record does not support that Ms. Stanwyck exerted undue control over their finances or that she abused petitioner. This additional factor would not affect our analysis of petitioner's request for relief under sec. 6015(f). Accordingly, respondent's motion for leave to supplement his opening brief is moot.

liable for any additions to tax or interest. The record does not support petitioner's contention that Ms. Stanwyck is responsible because she served as the family's and the law practice's bookkeeper. Accordingly, petitioner has failed to meet a threshold condition for relief from joint and several liability under section 6015(f).

II. Collection Action Review

We now focus on the collection action and begin with the applicable standard of review. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue,[4] the Court will review the Commissioner's determination for abuse of discretion. Id. at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We must decide whether respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. See Woodral v. Commissioner,

---

[4]Petitioner did not challenge the deficiency notices for 1997 and 1998 by timely petitioning this Court. Nor did petitioner object to the proof of claim and amended proof of claim filed in his most recent bankruptcy. See 11 U.S.C. sec. 502 (2006); Kendricks v. Commissioner, 124 T.C. 69, 77 (2005). Petitioner has not argued or demonstrated that the liabilities for the years at issue should be reviewed de novo.

112 T.C. 19, 23 (1999); <u>Fargo v. Commissioner</u>, T.C. Memo. 2004-13, <u>aff'd</u>, 447 F.3d 706 (9th Cir. 2006).

We now review collection proceeding requirements. If any person liable for a Federal tax liability neglects or refuses to make payment within 10 days of notice and demand, the Commissioner is also authorized to collect the tax by levy on that person's property. Sec. 6331(a). At least 30 days before enforcing collection by levy on the person's property, the Secretary is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person. Sec. 6331(d).

Section 6320 provides that the Secretary shall furnish written notice of the filing of a Federal tax lien under section 6321. Such notice must be provided not more than 5 business days after the day of the filing of the notice of lien (5-day period). Sec. 6320(a)(2). The person may request administrative review of the matter within 30 days beginning on the day after the 5-day period. Sec. 6320. The hearing generally shall be conducted consistent with the procedures set forth in section 6330. Sec. 6320(c).

If the person requests a hearing, he or she may raise at that hearing any relevant issues relating to the unpaid tax or the proposed levy. Sec. 6330(c)(2). Relevant issues include any appropriate spousal defenses, challenges to the

appropriateness of collection, and possible alternative means of collection such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A). The collection review hearing may consist of one or more written or oral communications between an Appeals officer and the taxpayer. Dinino v. Commissioner, T.C. Memo. 2009-284; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. A face-to-face hearing is not required under section 6330. See Katz v. Commissioner, 115 T.C. 329, 337 (2000) (telephone conference procedurally proper); Williamson v. Commissioner, T.C. Memo. 2009-188 (taxpayer not entitled to face-to-face hearing); Stockton v. Commissioner, T.C. Memo. 2009-186 (upholding denial of face-to-face conference); Leineweber v. Commissioner, T.C. Memo. 2004-17 (prior telephone conversations constitute hearing).

After the hearing, the Appeals officer is required to make a determination that addresses the issues the taxpayer raised, verifies that all requirements of applicable law and administrative procedure have been met, and balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. Sec. 6330(c)(3)(C).

We again note that petitioner failed to file any post-trial brief.[5] Petitioner's testimony and examination of witnesses were incoherent and irrelevant. We therefore must look to the defects petitioner set forth in the petition. They are the same issues petitioner raised in requesting a hearing.

A. Verification of Procedural Requirements

Petitioner asserts that respondent did not issue a notice and demand, observe a 10-day waiting period before recording the lien or issue the notice of lien within the 5-day period. We find no merit to petitioner's claims. Respondent confirmed that he issued the notice and demand when the tax was assessed, observed the 10-day waiting period and sent a notice of lien within the 5-day period. See sec. 301.6320-1(a)(1), Proced. & Admin. Regs.

Petitioner also contends that respondent improperly recorded the lien while the innocent spouse request was pending. The Commissioner is permitted to record a tax lien against a taxpayer while a section 6015 claim is pending. See Beery v. Commissioner, 122 T.C. 184, 190 (2004).

_____

[5]By disregarding the post-trial briefing requirement, petitioner has not meaningfully developed his contentions and effectively abandoned these arguments. See Zapara v. Commissioner, 124 T.C. 223, 233 (2005), aff'd, 652 F.3d 1042 (9th Cir. 2011).

Next, petitioner asserts that he was entitled to conduct formal discovery. We disagree. The hearing process is informal and does not afford a taxpayer the right to discovery. Sec. 301.6320-1(d)(2), Proced. & Admin. Regs. A taxpayer does not have subpoena power over witnesses or documents. See Katz v. Commissioner, 115 T.C. 329, 337 (2000); sec. 301.6320-1(d)(2), Proced. & Admin. Regs.

Finally, petitioner suggests that respondent did not reasonably accommodate his disability during the Appeals process. This Court, as well as others, has held that the ADA does not apply to the Federal Government. See Pitts v. Commissioner, T.C. Memo. 2010-101 (citing 42 U.S.C. sec. 12131(1), and Agee v. United States, 72 Fed. Cl. 284, 289 (2006)). Notwithstanding, petitioner never requested a specific accommodation and even admitted that he was not disabled. Petitioner did advance his issues with the collection action through telephone and written communications with respondent. It was petitioner who failed to appear at the face-to-face hearings. We therefore find no merit to petitioner's argument.

B. Challenges to the Collection Action

Petitioner asserts that respondent disregarded the automatic stay provision of the Bankruptcy Code. See 11 U.S.C. sec. 362 (2006). We disagree. The automatic stay generally remains in effect until the earliest of the closing of the case, the

dismissal of the case, or the grant or denial of a discharge. Id. sec. 362(c)(2); Prevo v. Commissioner, 123 T.C. 326, 329 (2004). Respondent determined that the collection action commenced in 2004 after the discharge was denied in 2003. The record supports that the bankruptcy court granted summary judgment against petitioner and the discharge was denied in September 2003. Petitioner has not demonstrated that the automatic stay provision remained in effect.

C.  Spousal Defenses

Respondent's review also considered petitioner's spousal defenses. AO Cipriotti thoroughly reviewed petitioner's claim for innocent spouse relief. Petitioner also directed SO Kaminski (who was reviewing the collection action) not to consider any spousal defenses. Petitioner disputes respondent's conclusions and suggests respondent misstated the facts. We disagree with petitioner. Respondent acted within his discretion.

D.  Collection Alternatives

Finally, petitioner did not suggest collection alternatives. Nor did petitioner provide any financial information for SO Kaminski to consider any collection alternatives. We have frequently and consistently held that an officer does not abuse any discretion by refusing to consider collection alternatives if the taxpayer

fails to submit the required and requested financial information. See Sapp v. Commissioner, T.C. Memo. 2006-104; Picchiottino v. Commissioner, T.C. Memo. 2004-231; Newstat v. Commissioner, T.C. Memo. 2004-208. In addition, issues that were not raised in Appeals cannot later be raised with the Court. See Giamelli v. Commissioner, 129 T.C. 107, 113-115 (2007).

III. Conclusion

In toto, petitioner bombarded respondent for 18 months with irrelevant information, failed to provide requested information and ultimately ignored communications from respondent. Petitioner requested in-person hearings to resolve each issue, yet failed to appear. There were more than 20 written communications and 10 phone calls between petitioner and respondent. Respondent verified that legal requirements were met, considered all issues raised, and concluded that the collection action was no more intrusive than necessary. Respondent did not abuse his discretion by sustaining the collection action.

As a final matter, we address whether it is appropriate for us to impose a penalty against petitioner on our own motion under section 6673. This section authorizes the Tax Court to require a taxpayer to pay to the United States a penalty of up to $25,000 whenever it appears that proceedings have been instituted or maintained primarily for delay or that the taxpayer's position in such proceedings is

frivolous or groundless. See sec. 6673; Grunsted v. Commissioner, 136 T.C. 455, 462 (2011). The Court has indicated its willingness to impose such penalties in collection review cases. Pierson v. Commissioner, 115 T.C. 576 (2000).

It is apparent from the record that petitioner instituted this proceeding in continuation of his refusal to acknowledge and satisfy his tax obligations. Such proceedings waste the Court's and respondent's limited resources, taking time away from taxpayers with legitimate disputes. Although we do not impose a penalty on petitioner pursuant to section 6673(a)(1) at this time, we admonish petitioner that the Court will consider imposing such a penalty if he advances arguments similar to those raised here. See Wnuck v. Commissioner, 136 T.C. 498, 513-514 (2011).

In reaching these holdings, we have considered all of the parties' arguments, and, to the extent not addressed, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.